UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Statesville DIVISION
DOCKET NO. 5:16-cv-00048-GCM

| | | |
|---|---|---|
| **ANDREA R. ROOPE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **NANCY A. BERRYHILL** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary Judgment
(Doc. No. 11) and the Commissioner's Motion for Summary Judgment (Doc. No. 13). Having
carefully considered such motions and reviewed the pleadings, the court enters the following
findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.      **Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits
on May 3, 2010, alleging a disability onset date of March 19, 2010. Plaintiff's claim was denied
both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing
before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a
decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals
Council. On February 26, 2014 the Appeals Council vacated the ALJ's decision and remanded
the case. In its remand order the Appeals Council directed the ALJ to update the evidence on the
claimant's medical condition, give further consideration to the maximum residual functional
capacity during the entire period at issue and evaluate the nontreating source opinion by Dr.

Peter Morris and the nonexamining source opinions by Dr. Bonny Gregory and Dr. Nancy Herra, and obtain evidence from a vocational expert.

After conducting a second hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council on September 26, 2014. On January 21, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision Defendant's final administrative decision on Plaintiff's applications. Thereafter, Plaintiff timely filed this action.

## II.     Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## III.     Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same

testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     Whether the claimant is engaged in substantial gainful activity;

(2)     Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)     Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5)     Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.     The Administrative Decision**

In rendering the decision, the ALJ applied the five-step sequential evaluation process for evaluating disability claims set forth in the regulations. The ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity after the alleged onset date (Tr. 19), and at step two that Plaintiff had the following severe, medically

determinable impairments: fibromyalgia, arthritis, status post cervical fusion, and depressive disorder with anxiety (Tr. 20). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 21-22).

Next, the ALJ determined that Plaintiff had the residual functionary capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following restrictions "a sit/stand option that would allow her to shift positions at will, no work around unprotected heights, extreme temperatures, or excessive amounts of dust, fumes, or gases, and simple, routine, repetitive tasks with only occasional contact with supervisors, co-workers, and the public." (Tr. 23). In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (Tr. 23). While the ALJ found that the Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, she determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible (Tr. 25).

At the fourth step, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 28).

At the final step, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 29). The ALJ reached this conclusion after considering the claimant's age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines. (*Id.*) The vocational expert testified that given all these factors, the claimant would be able to perform the requirements of occupations such

as a laundry folder and packaging and filling machine attendant in health and beauty aids and cosmetics. (Tr. 42). Therefore, the ALJ found that Roope was not disabled under the Act. (*Id.*).

**D.     Discussion**

Plaintiff has made the following assignments of error: (1) whether the ALJ properly accounted for moderate limitations in concentration, persistence, and pace in determining Plaintiff's Mental Residual Functional Capacity (RFC); (2) whether the ALJ properly explained his RFC finding with an adequate function-by-function analysis and accounting for the ability to stay on task for a full workday and attend work regularly; and (3) whether the ALJ properly weighed Dr. Morris' medical opinion.

**I.     Plaintiff's Moderate Limitations in Concertation, Persistence, and Pace**

In his Step 3 analysis the ALJ concluded that Mrs. Roope has moderate difficulties (i.e. limitations) with regard to concentration, persistence and/or pace (Tr 23). The ALJ determined at Step 4 and Step 5 that Mrs. Roope had

> the RFC to perform light work as defined in 20 CFR 404 1567(b) with the following additional exertion and nonexertional restrictions: a sit/stand option that would allow her to shift positions at will, no work around unprotected heights, extreme temperatures, or excessive amounts of dust, fumes, or gases, and simple, routine, repetitive tasks with only occasional contact with supervisors, co-workers, and the public.

(Tr 23).

Mrs. Roope contends that the ALJ failed to properly account for her limitations in concentration, persistence and pace by simply limiting Mrs. Roope to the performance of "simple, routine, repetitive tasks with only occasional contact with supervisors, coworkers, and the public" (Tr 23). She further argues that this contention is both well supported and consistent with the 4th Circuit Court of Appeals' holding in *Mascio v Colvin*, 780 F.3d 632 (4th Cir. 2015).

The court in *Mascio* indicated its agreement with "other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistent and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" *Id* at 638 *(*quoting *Winschel v. Comm'r of Soc. Sec*., 631 F.3d 1176, 1180 (11th Cir. 2011)). The court distinguished the "ability to perform simple tasks from the ability to stay on task," and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The Fourth Circuit remanded the case because it found that moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.*

In the instant case, the ALJ did take into account the claimant's limitations in concentration, persistence or pace in the RFC determination. The ALJ explained that the limitation to simple, routine repetitive tasks was appropriate in light of the claimant's concentration, persistence, and pace limitations because these difficulties "prevent[ed] her from performing the highly detailed and complex tasks required of 'skilled' work but d[id] not prevent her from performing the simpler tasks involved in 'unskilled' work" (Tr. 28). In addition, the ALJ did more than limit the claimant to simple, routine tasks or unskilled work; the ALJ found that the claimant "is able to sustain attention and concentration for two hours at a time, to . . . follow short, simple but not detailed instructions and to perform routine tasks. Due to her moderate difficulties in social interaction, she is limited to occasional contact with the public, supervisors." (Tr. 28).

An explanation of how long a claimant is able to sustain concentration and attention to perform tasks is a direct accounting for the claimant's ability to stay on task — and difficulties in concentration, persistence and pace. As the preamble to the mental-disorders Listings states,

"Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C.3. Therefore, the ALJ's finding does specifically address the Plaintiff's ability to stay on task as required by *Mascio*. So, the ALJ's RFC finding sufficiently accounts for the Plaintiff's moderate limitations in concentration, persistence, and pace and is not grounds for remand. *See, e.g., Linares v. Colvin*, 2015 WL 4389533, at *5 (W.D.N.C., July 17, 2015) (holding that the ALJ" accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact"); *Seamon v. Astrue,* 364 F. App'x 243, 248, 2010 WL 323515, at *4 (7th Cir.2010) (holding that the ALJ "captured [the claimant's] moderate limitation in concentration, persistence, and pace when he included a restriction of 'no high production goals' "); *Robinson v. Comm'r of Soc.Sec.,* No. 13–cv–13124, 2014 WL 4145339, at *10 (E.D.Mich. Aug.20, 2014) (finding that the ALJ accounted for plaintiff's moderate difficulties with concentration, persistence, or pace by limiting plaintiff's RFC to "simple, routine, and repetitive tasks and free of fast-paced production requirements"            ); *Schooley v. Astrue,* No. 1:09 CV 2748, 2010 WL 5283293, at *2 (N.D.Ohio Dec.17, 2010) (a hypothetical limiting plaintiff to work not involving "high productions quotas or piece work" was consistent with a moderate limitation in concentration, persistence, or pace).

## II. Other RFC Determination Arguments

### a. Function-by-Function Analysis

SSR 96–9p requires that a claimant's nonexertional capacity be expressed in terms of work-related functions. SSR 96–9p, 1996 WL 374184, at *6. Work-related mental activities

generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. *Id.* "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.*

In this case, the ALJ explained that, "[i]n making [his] physical function by function assessment," he generally agreed with the physical-RFC assessment of Dr. Virgili, the State-agency medical consultant (Tr. 23, 26, 241–43), including concurring with the need for the environmental limitations discussed by Dr. Virgili and Dr. Morris (Tr. 23, 26–27, 243, 736). The ALJ included a sit-stand option, allowing Plaintiff to shift positions as needed, based on Dr. Morris's opinion that Plaintiff could stand or walk for about four hours in an eight-hour workday, with a break every hour, and sit for about four hours in an eight-hour workday, with a break every half-hour. (Tr. 23, 27, 735).

The ALJ also explained, regarding his mental-RFC assessment, that he gave some weight to the opinions of Drs. Duszlak and Kirkland (*see* Tr. 27–28, 527, 641) and substantial weight to the mental-RFC assessments of the State-agency consultants, Drs. Gregory and Herrera (*see* Tr. 28, 223–25, 243–45). The ALJ further explained, regarding his mental-RFC assessment, that Plaintiff's moderate CPP difficulties "prevent[ed] her from performing the highly detailed and complex tasks required of 'skilled' work but d[id] not prevent her from performing the simpler tasks involved in 'unskilled' work"; that she was "able to sustain attention and concentration for two hours at a time, . . . to follow short, simple but not detailed instructions and to perform routine tasks"; and that, "[d]ue to her moderate difficulties in social interaction, she [was] limited to occasional contact with the public, supervisors" (Tr. 28).

Additionally, the ALJ discussed other evidence, both Plaintiff's testimony and the medical evidence, in the course of his RFC analysis as a whole (*see* Tr. 24–28). Indeed, Plaintiff acknowledges that "the ALJ did discuss the medical evidence in the record and the opinions in the record" (Pl. Br. 15). Unlike in *Mascio*, this Court is not "left to guess about how the ALJ arrived at his conclusions." *Mascio,* 780 F.3d at 637. The ALJ's explicit function-by-function analyses, together with his RFC analysis as a whole, is more than adequate to permit meaningful judicial review. *See id.* at 636 (clarifying that, even in the absence of an express function-by-function analysis, remand is not necessarily required but "may" be warranted when an "ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record" or "where other inadequacies in the ALJ's analysis frustrate meaningful review") (internal quotation marks omitted).

The Court would also note that the ALJ is not required to explain why every alleged symptom did not result in a certain functional limitation. *See, e.g. Grubby v. Astrue,* No. 1:09-cv-00364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (stating that "an ALJ does not have to specifically refer to every piece of evidence in his or her decision") (citation omitted), *report and recommendation adopted*, No. 1:09-cv-00364, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011); *Aytch v. Astrue*, 686 F. Supp. 2d 590, 602 (E.D.N.C. 2010) (stating that a contrary rule "would create an impracticable standard for agency review, and one out of keeping with the law of this circuit"). Indeed, "an ALJ need not articulate a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Burns v. Colvin*, No. 3:14-cv-270-RJC, 2016 WL 270311, at *6 (W.D.N.C. Jan. 20, 2016) (citation omitted). Here, the ALJ adequately discussed the relevant evidence and how it supports his RFC finding.

### b. Plaintiff's Ability to Stay On Task For Full Workday

In addition, Plaintiff argues that, in light of the combined effect of her alleged impairments and symptoms, she was not able to stay on task for a full workday or attend work regularly (Pl. Br. 17–18). This argument, ultimately, is an argument that Plaintiff was limited in excess of the ALJ's RFC finding. However, as discussed above, the ALJ provided significant evidence to support his RFC determination.

Plaintiff's argument (*see* Pl. Br. 18) is rooted in the Fourth Circuit's *Mascio* decision in which the Fourth Circuit said that the ALJ "said nothing about [the claimant's] ability to perform [certain functions] for a full workday." 780 F.3d at 637. But, the court made that statement in the context of a broader finding, based also on other factors, that the ALJ's decision was "sorely lacking in the analysis needed" for meaningful judicial review. *Id.* at 636–37. Thus, in *Mascio*, the court was "left to guess about how the ALJ arrived at his conclusions . . . ." *Id.* In this case, by contrast, the ALJ's findings and explanations are sufficiently clear to permit meaningful judicial review.

### III. Dr. Morris's Medical Opinion

Plaintiff makes two arguments against the ALJ's evaluation of, and accounting for, Dr. Morris's medical opinion (*see* Pl. Br. 18–21).

First, Plaintiff argues that the ALJ did not explain how a sit-stand option at will accounted for the "breaks" for which Dr. Morris provided. (*see* Pl. Br. 18–19). In particular, Dr. Morris opined that Plaintiff could be expected to stand or walk for about four hours in an eight-hour workday, with a break every hour, and sit for about four hours in an eight-hour workday, with a break every half-hour. (Tr. 735). Though the ALJ did not fully adopt this part of Dr. Morris's opinion, he explained how he accommodated it in part: "Based on Dr. Morris's

conclusion regarding her inability to sit or stand/walk for more than four hours with breaks, I have added a sit/stand option to allow her to shift positions as needed." (Tr. 27). Plaintiff argues that the ALJ did not provide an explanation of how this sit/stand option at will replaces the need for breaks 8-12 times throughout the workday.

The Court finds this argument to be without merit. It is clear to the Court how including an option to allow the claimant to shift positions as needed more than accounts for Dr. Morris's conclusions discussed above. With such an option the claimant should be able to shift positions when she needs to. Importantly, the part of this limitation that the ALJ did not fully adopt pertains to the amount of time that Plaintiff could sit, stand, and walk. The ALJ more than accommodated the part of the limitation pertaining to "breaks," which is what Plaintiff's argument ultimately is about.

Second, Plaintiff argues that, although "it is reasonable to assume that the ALJ adopted this portion [i.e., the avoidance of temperature extremes] of Dr. Morris's opinion . . . ," [t]he ALJ offers no explanation for why he did not also adopt, or why he failed to adopt, Dr. Morris' opinion that [she] would have 'occasional postural limitations.'" (Pl. Br. 19–20) (citations omitted). The ALJ expressly stated that he "concur[red] with the need for environmental limitations described by Dr. Virgili and Dr. Morris." (Tr. 27). And, as Dr. Virgili did not include the avoidance-of-temperature-extremes limitation in his assessment (*see* Tr. 242), the ALJ's statement indicates that this limitation was based on Dr. Morris's opinion. However, an ALJ is entitled to accept some parts of a medical opinion and reject others. *See, e.g.*, *Geary v. Colvin*, No. 1:15-cv-00579, 2016 WL 3039835, at *11 (M.D.N.C. May 27, 2016) (stating that, by giving significant weight to one part of a medical opinion, "the ALJ bound herself neither to give

significant weight to the remainder of [the] opinion, nor to adopt all of [the doctor's] findings whole cloth") (citing cases from various jurisdictions for similar propositions).

The key question here is whether substantial evidence supports the ALJ's decision not to include postural limitations in his RFC finding. Squatting and kneeling are the postural limitations at issue. As Plaintiff states (Pl. Br. 20), Dr. Morris explained that his opinion regarding postural limitations was based on his examination findings (Tr. 735–36). And the relevant examination finding is that Plaintiff had difficulty with squatting and kneeling (*see* Tr. 734).

It is the prerogative of the ALJ to weigh conflicting evidence, and substantial evidence supports the ALJ's weighing here. It would thus be improper for the Court to reweigh the evidence to reach a different conclusion. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted); *Saunders v. Colvin*, No. 5:12-cv-775-D, 2014 WL 1057024, at *12 (E.D.N.C. Mar. 17, 2014) ("While there may be conflicting evidence as to Claimant's need for . . . postural/positional limitations, it is the province of the ALJ to resolve inconsistencies in the record leaving this court to determine if the ALJ's determination is supported by substantial evidence.") (citation omitted).

Additionally, though there is no error here, any error would be harmless because the jobs provided by the VE at the hearing (Tr. 104–05) and identified by the ALJ at step five (Tr. 29) do not, according to the *DOT*, require either squatting or kneeling. In particular, the job of folder (*DOT* 369.687-018, 1991 WL 673072) does not involve any listed postural activity (climbing, balancing, stooping, kneeling, crouching, or crawling), and the job of machine packager (*DOT* 920.685-078, 1991 WL 687942) involves only occasional stooping. In other words, even if Dr. Morris's opinion that Plaintiff could only occasionally perform postural maneuvers (squatting

and kneeling) were accepted, that limitation would not have precluded Plaintiff's being able to perform either of the jobs identified at step five.

Thus, substantial evidence supports the ALJ's evaluation of, and accounting for, Dr. Morris's medical opinion.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales,* 402 U.S. 389 (1971). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Id.* at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1)     the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2)     Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; and

(4)     this action is **DISMISSED**.

Signed: April 12, 2017

Graham C. Mullen
United States District Judge